UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| BARR INCORPORATED, | * | |
| | * | |
| Plaintiff | * | |
| | * | Civil Case No. 15-40056-MGM |
| v. | * | |
| | * | |
| STUDIO ONE, INC., | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM AND ORDER REGARDING
DEFENDANT'S MOTION TO DISMISS
(Dkt. No. 15)

November 18, 2015

MASTROIANNI, U.S.D.J.

## I. INTRODUCTION

Barr Incorporated ("Plaintiff") brings this suit against Studio One, Inc. ("Defendant") for tortious interference with contractual and advantageous relations and unfair and deceptive trade practices in violation of Massachusetts General Laws Chapter 93A ("Chapter 93A"). Defendant has filed a motion to dismiss Plaintiff's amended complaint, arguing that Plaintiff has failed to state a claim upon which relief can be granted and that Plaintiff's suit is barred under a theory of claim preclusion. For the reasons discussed below, Defendant's motion to dismiss is denied.

## II. JURISDICTION

Plaintiff brings this suit based on diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), as it is a Connecticut corporation and Defendant is a Massachusetts corporation. Plaintiff seeks damages of $1,000,000, which is well above the amount-in-controversy requirement of $75,000 imposed by 28 U.S.C. § 1332(a).

1

### III. FACTS AS ALLEGED BY PLAINTIFF

Plaintiff is a general contracting firm and Defendant is an architectural firm. (Am. Compl., Dkt. No. 11, ¶¶ 1-2.) This dispute arises out of work done for Northbrook Village II, Inc. ("Owner") in connection with the Northbrook Village II Project in Berlin, Massachusetts (the "Project"). On November 29, 2011, Plaintiff entered into a contract (the "Contract") with Owner to serve as general contractor and to perform certain commercial improvements, upgrades, additions, and renovations to the Project. (*Id.* ¶ 6.) Around the same time, Owner entered into a design and contract administration agreement with Defendant (the "AIA Contract") to administer the Contract. (*Id.* ¶ 7.) The Contract identified Defendant as the "Initial Decision Maker" to review certain claims that might arise under the Contract. (*Id.* ¶ 8.) The Contract required Defendant to "interpret and decide matters concerning performance under, and requirements of, the Contract Documents on written request of either the Owner or [Plaintiff]," and further required Defendant to respond to any such requests in writing within a reasonable time. (*Id.* ¶ 10.) Such interpretations and decisions were required to be consistent with the intent of the Contract, made in good faith, and rendered without partiality to either Owner or Plaintiff. (*Id.* ¶ 11.) Pursuant to the Contract, Owner could not terminate Plaintiff "for cause" absent a certification by Defendant properly made pursuant to the procedural and substantive provisions of the Contract. (*Id.* ¶ 9.)

Plaintiff began work on the Project in December 2011, and asserts that it "properly performed" its work and "otherwise performed its Contract obligations." (*Id.* ¶ 23.) Prior to execution of the Contract, Owner and Defendant became aware the Project would require changes to the paving and water delivery systems to be provided under the Contract. (*Id.* ¶¶ 12-21.) Owner and Defendant did not prepare timely alternative designs and obtain all requisite approvals from the United States Department of Housing and Urban Development ("HUD") for orders associated with these changes, leading to delays on the Project. (*Id.* ¶¶ 22, 24-29.) The delays pushed back the

original completion date of January 29, 2013, and certain HUD approvals were not granted until February 5, 2013. (*Id.* ¶¶ 25-26.) As a result of such delays, Plaintiff was entitled to an extension of time and an increase in payment under the Contract. (*Id.* ¶¶ 30-31.) Plaintiff asserted claims under the Contract for an extension of time and an increase in payment, but it states that Owner and Defendant "wrongfully delayed and withheld" all such relief. (*Id.* ¶¶ 32-33.) Under the AIA Contract, Defendant was not entitled to additional compensation for the delays. (*Id.* ¶ 34.) Defendant was, however, entitled to additional compensation in the event Plaintiff was terminated by Owner under the Contract. (*Id.* ¶ 35.)

During the course of Plaintiff's performance of the Contract, Owner encountered funding issues, failed to make complete and timely payments to Plaintiff, and failed to ensure it had sufficient funding to fulfill its own obligations under the Contract. (*Id.* ¶ 36.) Plaintiff cites a specific example of an "Owner Project meeting" on March 20, 2013 at which "Owner's fiscal mismanagement and lack of capital was discussed in detail." (*Id.* ¶ 37.) Although it is unclear which parties attended this meeting, Plaintiff asserts Defendant knew of the meeting and Owner's financial troubles. (*Id.* ¶ 38.)

Plaintiff asserts that, in early 2013, "Owner and [Defendant] colluded to fabricate grounds for terminating [Plaintiff] from the Project." (*Id.* ¶ 39.) According to Plaintiff, Owner "decided that the only way to excuse its mismanagement of the Project and avoid paying [Plaintiff] would be to terminate [Plaintiff's] Contract." (*Id.* ¶ 40.) To that end, Owner required Defendant to certify that sufficient cause existed to terminate Plaintiff. (*Id.* ¶ 41.) At the same time, Defendant required Owner to terminate Plaintiff in order to receive compensation for delays on the Project. (*Id.* ¶ 42.) Defendant ultimately agreed to certify that sufficient grounds existed for terminating Plaintiff, even though Defendant knew no such grounds existed. (*Id.* ¶ 43.) Owner refused to pay Plaintiff for requisitions between March and May of 2013. (*Id.* ¶ 44.) Plaintiff claims "Owner asserted its breach

of Contract 'ma[de] the bonding company happy,'" although Plaintiff is not specific regarding what alleged breach this refers to. (*Id.* ¶ 45.)

On June 3, 2013, Owner advised Plaintiff that it intended to terminate the Contract. (*Id.* ¶ 46.) According to Plaintiff, Owner and Defendant "fabricated the bases for terminating [Plaintiff] by asserting that [Plaintiff] materially breached the Contract by repeatedly refusing or failing to supply enough properly skilled workers or proper materials," which is a specific ground for termination provided by the Contract. (*Id.* ¶ 47; Def. Mem. Supp. Mot. to Dismiss ("Def. Mem."), Dkt. No. 16, Ex. C § 14.2.1) Plaintiff asserts that Owner and Defendant "knew these allegations were false." (Am. Compl. ¶ 47.) In support of this claim, Plaintiff states that Defendant knew the HUD delays were not Plaintiff's fault, that Defendant confirmed in writing on January 24, 2013 that the Project delays were not Plaintiff's fault, and that the minutes of the March 20, 2013 Owner Project meeting do not indicate any failure to perform on Plaintiff's part. (*Id.* ¶¶ 48-50.) Plaintiff alleges Defendant caused Owner "to breach the Contract for financial gain and to secure benefits to which it would not otherwise be entitled . . . including, among other things, substantial compensation for post-termination services and opportunities that would not have been available to [Defendant] absent the wrongful termination of [Plaintiff]." (*Id.* ¶ 63.)

The termination notice sent on June 3, 2013 included a "Corrective Action Plan." (*Id.* ¶ 51.) According to Plaintiff, the terms of the Corrective Action Plan "were onerous and unfair on their face such that Owner and [Defendant] knew [Plaintiff] would not accede to them." (*Id.*) The termination notice also included a certification by Defendant that sufficient grounds existed for the termination. (*Id.* ¶ 46.) Upon receipt of the termination notice, Plaintiff filed a claim under the Contract seeking a determination by Defendant that this certification was improper. (*Id.* ¶ 52.) Defendant ignored this claim. (*Id.*) In so doing, according to Plaintiff, Defendant "fail[ed] to follow the claims procedure and fail[ed] to exercise minimal good faith concerning [Plaintiff's] claim." (*Id.*)

4

Plaintiff was formally terminated from the Contract on June 30, 2013. (*Id.* ¶ 53.) In addition to being excluded from the Project, Plaintiff had "legitimate and identifiable prospective contracts" with subcontractors and independent contractors that were "reasonably certain of maturing into future economic benefits." (*Id.* ¶ 67.) Plaintiff claims Defendant knew of these relationships and expectancies, and asserts Defendant "knowingly and purposefully" interfered with them by causing Defendant's termination from the Contract. (*Id.* ¶¶ 68-70.)

On November 13, 2013, Plaintiff filed a complaint against Owner in the Worcester Division of the United States District Court for the District of Massachusetts. (Def. Mem. at 1.) The complaint alleged breach of contract and violation of Chapter 93A, among other things. (*Id.* at 2.) On August 14, 2014, Plaintiff, Owner, and the third-party defendant Hartford Fire Insurance Company stipulated to the dismissal with prejudice of all claims in that suit. (*See* Stipulation of Dismissal with Prejudice, *Barr Inc. v. Northbrook Village II, Inc.*, Case No. 13-cv-40134-TSH (D. Mass. Aug. 14, 2014), Dkt. No. 55.) On April 30, 2015, Plaintiff filed the complaint in this action. Following Defendant's initial response, Plaintiff filed its amended complaint on June 8, 2015, after which Defendant filed a motion to dismiss.

## IV. STANDARD OF REVIEW

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also San Gerónimo Caribe Project, Inc. v. Acevedo-Vilá*, 687 F.3d 465, 471 (1st Cir. 2012). The burden is on the moving party to demonstrate that even when viewed in the light most favorable to the plaintiff, the complaint lacks "sufficient factual matter" to state an actionable claim for relief that is "'plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When evaluating the sufficiency of the factual allegations contained in the complaint, the court must be careful both to credit the factual assertions made by the plaintiff and to disregard "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* "Determining whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A complaint must survive a motion to dismiss if the facts alleged are sufficient as to each element to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Lister v. Bank of Am., N.A.*, 790 F.3d 20, 23 (1st Cir. 2015) ("Dismissal for failure to state a claim is appropriate if the complaint does not set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." (internal quotation marks omitted)).

## V. Discussion

Plaintiff's amended complaint alleges tortious interference with contractual relations (Count I), tortious interference with advantageous relations (Count II), and unfair and deceptive trade practices in violation of Chapter 93A (Count III). Defendant has filed a motion to dismiss Counts I and II for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Additionally, Defendant argues that, due to the stipulation of dismissal in Plaintiff's suit against Owner, Counts I and II should be dismissed on the grounds of claim preclusion. As for Count III, Defendant asserts it is based on the allegations underlying Counts I and II and should therefore be dismissed for the same reasons.

### A.  Motion to Dismiss Counts I and II for Failure to State a Claim

Under Massachusetts law, "[t]o prevail on a claim of tortious interference with a contract, a plaintiff must establish that '(1) he had a contract with a third party; (2) the defendant knowingly induced the third party to break that contract; (3) the defendant's interference, in addition to being

6

intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions.'" *Weiler v. Portfolioscope, Inc.*, 12 N.E.3d 354, 363 (Mass. 2014) (quoting *Psy-Ed Corp. v. Klein*, 947 N.E.2d 520, 536 (Mass. 2011)). Similarly, the elements of tortious interference with advantageous relations are a known advantageous relationship; deliberate interference, improper in motive or means; and resulting economic harm. *Tuli v. Brigham & Women's Hosp.*, 656 F.3d 33, 43 (1st Cir. 2011) (citing *Ayash v. Dana-Farber Cancer Inst.*, 822 N.E.2d 667, 690 (Mass. 2005)). Both claims therefore require a showing of improper motive or means.

Defendant argues that, in this case, Plaintiff has a heightened burden of showing that the improper motive or means constituted "actual malice." In support of this contention, Defendant asserts that actual malice is required to plead a claim of tortious interference in cases involving a corporate official acting within the scope of his capacity as a corporate official and in employment cases involving a supervisor acting on behalf of the supervisor's employer. *See Weiler*, 12 N.E.3d at 363 (requiring showing of actual malice in corporate official cases); *Zimmerman v. Direct Fed. Credit Union*, 262 F.3d 70, 76-77 (1st Cir. 2001) (discussing actual malice requirement in supervisor cases). Courts have reasoned that the alleged tortfeasor in these cases has a conditional privilege to purposely cause the breach of plaintiff's contract with a third party, and that a heightened pleading standard should apply because of that conditional privilege. *See, e.g., Zimmerman*, 262 F.3d at 76-77.

Defendant also cites *Bratt v. International Business Machines Corp.*, 467 N.E.2d 126, 131 (Mass. 1984), in which a conditional privilege was afforded to an employer's potentially defamatory communications regarding an employee because they served a "legitimate business interest," and *Shore v. Retailers Commercial Agency, Inc.*, 174 N.E.2d 376, 379 (Mass. 1961), in which a conditional privilege was found for a mercantile agency's potentially defamatory communications in a credit report because they served a "legitimate business need." Additionally, Defendant points to *BIB Construction Co. v. City of Poughkeepsie*, 204 A.D.2d 947 (N.Y. App. Div. 1994), a New York case with

7

similar facts to the case at hand. In *BIB Construction*, the plaintiff, a general contractor, sued an architectural firm for tortious interference when the architectural firm provided a report that induced the City of Poughkeepsie to terminate its contract with the plaintiff. *Id.* at 947. The court found that, while the defendant, as the city's agent, generally could not be held liable for inducing its principal to breach a contract, an exception arose "when an agent does not act in good faith and commits independent torts or predatory acts directed at another for personal pecuniary gain." *Id.* at 948.

From these cases, Defendant seeks to assert that a conditional privilege applies to its alleged actions in this case. Defendant's reasoning is not persuasive. As Plaintiff points out, this case does not involve a corporate official acting within the scope of her capacity as a corporate official or a supervisor acting on behalf of the supervisor's employer, so the heightened pleading standard from those cases does not apply. Defendant's arguments based on the defamation cases are unpersuasive, as the defamation context is factually and legally inapposite to the tortious interference claims in this case. Additionally, the New York case of *BIB Construction* does little to help Defendant. In that case, a party in Plaintiff's situation was merely required to plead a lack of good faith and independent tortious action on behalf of the defendant, a burden which Plaintiff has satisfied. Finally, as Plaintiff points out, there is binding precedent that intentional interference torts in Massachusetts do not require a showing of malice. In *United Truck Leasing Corp. v. Geltman*, the Supreme Judicial Court of Massachusetts expressly chose to "abandon the word malicious in the description of any element of" intentional interference torts, deciding that only improper conduct must be shown. 551 N.E.2d 20, 23 (Mass. 1990). The Supreme Judicial Court later found an exception requiring actual malice in employment cases against corporate officials acting in their capacity as corporate officials, *see Blackstone v. Cashman*, 860 N.E.2d 7 (Mass. 2007), but this is not such a case. A plaintiff is only

required to plead actual malice in a narrow subset of cases that is not implicated here. Plaintiff is therefore not required to plead actual malice.

Aside from its arguments regarding actual malice, Defendant has not otherwise asserted that Plaintiff has failed to state plausible claims for relief for tortious interference with contractual and advantageous relations. Nevertheless, the court must be satisfied that Plaintiff has alleged facts sufficient to meet each element of the tortious interference claims. A brief review, drawing every reasonable inference in Plaintiff's favor, demonstrates that it has. For the claim of tortious interference with a contract, Plaintiff has alleged it entered into the Contract with Owner and Defendant knowingly induced Owner to break the Contract by falsely certifying that sufficient grounds existed for terminating Plaintiff. By alleging that Defendant's certification was knowingly false and was motivated by the prospect of additional compensation in the event of Plaintiff's termination, Plaintiff has alleged that Defendant's actions were improper in motive or means. Finally, Plaintiff has alleged that it suffered economic harm by losing out on payments under the Contract. With respect to the claim for tortious interference with advantageous relations, Plaintiff has alleged that it had advantageous relationships with subcontractors and other general contractors, and that Defendant knew of and purposefully interfered with these relationships by causing Plaintiff's termination from the Project. The allegedly fabricated certification by Defendant satisfies the improper motive or means element, and Plaintiff has also alleged economic harm insofar as it lost out on identifiable prospective contracts as a result of its termination. Accordingly, Defendant's motion to dismiss Counts I and II for failure to state a claim is denied.

B.  **Claim Preclusion with Respect to Counts I and II**

Defendant argues the tortious interference claims should be dismissed on the basis of claim preclusion, a specific doctrine that is part of the broader concept known as res judicata.[1] The three elements of claim preclusion are: (1) a final judgment on the merits in an earlier proceeding, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two actions. *See Hatch v. Trail King Indus., Inc.*, 699 F.3d 38, 45 (1st Cir. 2012); *Kobrin v. Bd. of Registration in Med.*, 832 N.E.2d 628, 634 (Mass. 2005). As a general matter, the First Circuit has "caution[ed] the district courts to tread gingerly in applying res judicata to nonparties." *Gonzalez v. Banco Cent. Corp.*, 27 F.3d 751, 757 (1st Cir. 1994).

With respect to the first element, the parties disagree regarding whether the stipulation of dismissal in Plaintiff's earlier suit against Owner qualifies as a "final judgment on the merits." Both parties cite the same First Circuit case, *Langton v. Hogan*, 71 F.3d 930 (1st Cir. 1995), in support of their contentions. That case states, in relevant part:

> The way in which a consent judgment or consent decree resolves, between the parties, a dispute over a legal issue is not a ruling on the merits of the legal issue that either (1) becomes precedent applicable to any other proceedings under the law of stare decisis or (2) applies to others under the law of claim preclusion or issue preclusion. . . . The parties to this case are bound by the rules of law declared in [this matter], although no other parties are so bound. . . . A judgment that is entered with prejudice under the terms of a settlement, whether by stipulated dismissal, a consent judgment, or a confession of judgment, is not subject to collateral attack by a party or a person in privity, and it bars a second suit on the same claim or cause of action.

*Id.* at 935 (internal citation omitted). The language in *Langton* cuts in favor of Plaintiff. Defendant was not a party to Plaintiff's earlier suit against Owner and was not named in the stipulation of dismissal. The stipulation in that earlier suit is therefore "not a ruling on the merits of the legal issue

---

[1] Although Defendant uses the terms "claim preclusion" and "res judicata" interchangeably, it actually seeks to apply the specific doctrine of claim preclusion, which is encompassed under the larger concept of res judicata. *See Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) ("The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'").

that . . . applies to others," such as Defendant. While the parties to the earlier action, such as Owner, are bound by the stipulation of dismissal, "no other parties," such as Defendant, "are so bound." Despite the existence of the AIA Contract, Defendant was not "a person in privity" with Owner in the earlier lawsuit. Privity would require that Defendant either substantially controlled Owner's involvement or permitted Owner to function as its de facto representative in the earlier lawsuit, and Defendant has not made any showing under either theory of privity. *See Gonzalez*, 27 F.3d at 758 ("[P]rivity exists . . . if a nonparty either substantially controlled a party's involvement in the initial litigation or, conversely, permitted a party to the initial litigation to function as his de facto representative."). Defendant is therefore unable to satisfy the first element of claim preclusion.

Even if Defendant were able to show the first element of the claim preclusion test is satisfied, the result would be the same. Defendant does have a colorable argument that the second prong of the test, sufficient identicality of the causes of action, is met.[2] But Defendant cannot establish the third element of claim preclusion, sufficient identicality between the parties. Defendant cites First Circuit cases applying the "close and significant relationship" test for determining identicality. *See, e.g., Hermes Automation Tech., Inc. v. Hyundai Elec. Indus. Co.*, 915 F.2d 739 (1st Cir. 1990); *In re El San Juan Hotel Corp.*, 841 F.2d 6 (1st Cir. 1988). Plaintiff points to a more recent Supreme Court case, *Taylor v. Sturgell*, 553 U.S. 880 (2008), that helps resolve the issue in its favor. At the hearing on this motion, Defendant attempted to distinguish *Taylor* because it involved a situation

---

[2] Identicality is determined based on a "transactional approach," under which "a cause of action is defined as a set of facts which can be characterized as a single transaction or a series of related transactions. The cause of action, therefore, is a transaction that is identified by a common nucleus of operative facts." *Apparel Art Int'l, Inc. v. Amertex Enters. Ltd.*, 48 F.3d 576, 583 (1st Cir. 1995). Factors to be considered include "(1) whether the facts are related in time, space, origin or motivation; (2) whether the facts form a convenient trial unit; and (3) whether treating the facts as a unit conforms to the parties' expectations." *Id.* at 584. The earlier suit against Owner asserted breach of contract, while this suit alleges tortious interference with contractual relations. Defendant has a viable argument that, even though Plaintiff sued Owner for damages arising solely out of the Contract and is now suing Defendant for misconduct that allegedly also affected future projects, the same set of facts giving rise to Plaintiff's termination under the Contract is at the core of the instant case.

where two plaintiffs sued the same defendant in successive cases, while the situation at bar involves the same plaintiff suing two defendants in successive cases. But *Taylor*'s reasoning applies to the preclusion of all nonparties, not just the preclusion of nonparty plaintiffs, and nothing in the decision suggests divergent treatment of nonparty plaintiffs and nonparty defendants. *See, e.g., id.* at 893 (discussing "the rule against *nonparty* preclusion") (emphasis added). *Taylor* is therefore applicable to the instant case.

In *Taylor*, the Court reiterated "the fundamental nature of the general rule that a litigant is not bound by a judgment to which she was not a party." *Id.* at 898. The Court went on to recognize six categories of exceptions to the general rule against applying res judicata to nonparties, although it cautioned that these categories were a "framework" and not a "definitive taxonomy." *Id.* at 893 & n.6. Three of the categories—preclusion by agreement of a nonparty, preclusion of relitigation through a proxy, and preclusion enforced by a special statutory scheme, *see id.* at 893-95—are plainly inapplicable. The other three categories have more bearing on this case, although none of them ultimately applies.

First, nonparty preclusion may be justified based on a preexisting "substantive legal relationship" between a bound party and a nonparty, such as "preceding and succeeding owners of property, bailee and bailor, and assignee and assignor." *Id.* at 894. While Defendant and Owner certainly had a legal relationship based on the AIA contract, it does not rise to the level of the relationships identified by the Court, which "originated 'as much from the needs of property law as from the values of preclusion by judgment.'" *Id.* (quoting 18A Charles Alan Wright, Arthur R. Miller & Edward R. Cooper, Federal Practice and Procedure § 4448 (2d ed. 2002)).[3]

---

[3] The Court noted that this category is where the potentially confusing term "privity" comes into play. *Taylor*, 553 U.S. at 894 n.8 ("The substantive legal relationships justifying preclusion are sometimes collectively referred to as 'privity.' The term 'privity,' however, has also come to be used more broadly, as a way to express the conclusion that nonparty preclusion is appropriate on any ground.") (internal citations omitted). Arguments based on the narrower meaning of privity are foreclosed by Defendant's lack of a substantive legal

Next, there is an exception where nonparties are "adequately represented by someone with the same interests who was a party" to the earlier suit. *Id.* (internal marks and citation omitted). But this requires that "either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty." *Id.* at 900. There is no suggestion or inference that Owner understood itself to be acting as Defendant's representative in the earlier suit, nor that the court in that suit took care to protect Defendant's interests. Adequate representation is not established by the fact that the Contract calls for Defendant to serve as Owner's "representative." (Def. Mem., Ex. C § 4.2.1). Such representation of Owner by Defendant is the opposite of what Defendant would have to establish for this category to apply. Moreover, the Contract states that Defendant "will have authority to act on behalf of the Owner only to the extent provided in the Contract Documents," meaning that its representation was for certain limited purposes. (*Id.*)

Finally, preclusion may be applied where the nonparty "assumed control" over the earlier suit. *Taylor*, 553 U.S. at 895 (internal marks omitted). For the same reasons that Defendant cannot establish that it "substantially controlled" Owner's involvement in the prior litigation with respect to the first prong of the claim preclusion test, Defendant also cannot establish that it "assumed control" over that earlier litigation.

To the extent Defendant seeks to invoke claim preclusion based on other factors that are insufficient to meet the above categories but speak to a "close and significant" relationship between itself and Owner, *Taylor* forecloses this attempt. Speaking to its preference for "crisp rules with sharp corners" in this area of the law, the *Taylor* Court held there is no "'virtual representation' exception to the general rule against precluding nonparties" that goes beyond the categorical framework

---

relationship with, substantial control over, or de facto representation by Owner. The broader meaning of privity does not set forth any independent basis for claim preclusion beyond those discussed in this decision.

outlined in that decision. *Id.* at 884, 901 (internal citation omitted). Defendant also cites to a recent First Circuit case, *Silva v. City of New Bedford*, that applied claim preclusion based on the existence of a "sufficiently close relationship." 660 F.3d 76, 80 (1st Cir. 2011). But the relationship in that case was between a city and its police officers, which by nature and circumstances is a far closer relationship than the one between Defendant and Owner in this case. The *Silva* court also spoke to close relationships based on "employment and agency," neither of which has been established here. *Id.*

Because Defendant cannot satisfy either the first or the third prong of the claim preclusion test, Plaintiff's case is not barred on a theory of claim preclusion.

### C. Treatment of Count III

Count III is entirely based on the substantive allegations underlying Counts I and II, and Defendant seeks its dismissal for the same reasons it put forward with respect to Counts I and II. Because Counts I and II are not dismissed at this stage, neither is Count III.

### VI. CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss (Dkt. No. 15) is DENIED in its entirety.

It is So Ordered.

　/s/ Mark G. Mastroianni　　　
MARK G. MASTROIANNI
United States District Judge